# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-20282-SHM-tmp |
| | ) | |
| CHRISTOPHER PARROTT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Before the court by order of reference is defendant Christopher Parrott's Motion to Suppress, filed on January 28, 2016. (ECF No. 20.) The government responded in opposition to Mr. Parrott's motion on February 10, 2016. (ECF No. 22.) On March 2, 2016, the court held a suppression hearing, which was continued to March 7, 2016, for the purpose of allowing defendant to call a witness who was unavailable at the time of the initial hearing. Special Assistant U.S. Attorney Samuel Stringfellow, defendant, and his counsel, Juni Ganguli, were present at each hearing. On March 2, the court heard testimony from Trooper Edwin Wilks of the Tennessee Highway Patrol. The court also admitted into evidence three exhibits, including Tennessee Department of Safety General Order #513 regarding

vehicle inventory and searches.  On March 7, the court heard testimony from Felicia Parrott, the defendant's wife.

The court has now considered the memoranda of law filed in support of and in opposition to the motion to suppress, the testimony of the witnesses, the exhibits presented, and the applicable law.  The court hereby submits the following proposed findings of fact and conclusions of law, and recommends that the motion to suppress be denied.

### I. PROPOSED FINDINGS OF FACT

**A. The Initial Encounter and Arrest**

At approximately 10:30 p.m. on August 29, 2015, Trooper Edwin Wilks of the Tennessee Highway Patrol was traveling westbound on Interstate 40 near mile marker 31 when he observed a disabled vehicle on the right shoulder with its hood raised and emergency lights flashing.  Trooper Wilks, who was by himself, pulled over to see if he could offer assistance.  Trooper Wilks discovered the vehicle's operator, defendant Christopher Parrott, looking under the vehicle's hood.  No other individuals were inside the vehicle or otherwise present at the scene.  While conversing with Mr. Parrott to attempt to diagnose the issue, Trooper Wilks "got a strong odor of marijuana and alcohol coming from Mr. Parrott."  (Hr'g Tr. 17, Mar. 2, 2016, ECF No. 29.)  Trooper Wilks also observed that Mr. Parrott was unsteady on his feet.  (Id. at 33.)  Trooper Wilks continued the

conversation and determined he was "dealing with an impaired person." (Id. at 18.)

Trooper Wilks began a field interview to determine whether Mr. Parrott had been illegally operating the vehicle while under the influence of drugs or alcohol. Mr. Parrott refused to undergo a field sobriety test, but he admitted to Trooper Wilks that he had been drinking alcohol and smoking marijuana that evening. Trooper Wilks then ran Mr. Parrott's driver's license and learned it had been revoked based on a prior conviction for driving under the influence. Trooper Wilks subsequently placed Mr. Parrott under arrest for suspicion of driving under the influence and for operating a motor vehicle on a revoked license. Mr. Parrott was handcuffed and placed in the back of Trooper Wilks's patrol car.

**B. The Vehicle Search**

Trooper Wilks ran the vehicle's license plate and discovered that the vehicle was registered to a "Felicia Buntin," who Trooper Wilks later learned is Mr. Parrott's wife, now known as Felicia Parrott. Rather than immediately calling for a tow truck, Trooper Wilks (who observed child seats in the vehicle and was concerned that the vehicle's owner would need them back) called Mrs. Parrott to inform her of her husband's arrest. After speaking with Mrs. Parrott on the phone at around 10:45 p.m., Trooper Wilks determined that Mrs. Parrott "could

not get there [to the vehicle] in any reasonable amount of time." (Hr'g Tr. 23, Mar. 2, 2016.) He thus initiated towing and inventorying procedures according to Department of Safety policy. Trooper Wilks credibly testified that it is the policy of the Department of Safety to not leave vehicles unattended on the side of the highway, as such vehicles present a road hazard. It is also the policy of the Department of Safety, per General Order #513, to "inventory all vehicle(s) towed by the member to protect [the Department] from liability." (Hr'g Ex. 1, § VI.H.) Additionally, General Order #513 provides explicit details on the manner in which the inventory search should be conducted and documented. (See id. at § VI.) While performing the inventory search, Trooper Wilks found a handgun on the front passenger seat under a baseball cap.[1] (Hr'g Tr. 41, Mar. 2, 2016.)

During the cross-examination of Trooper Wilks, he testified that, during the inventory search, he was looking for possible open containers as evidence of Mr. Parrott's driving under the influence. (Id. at 37.) Additionally, he testified that there were items in the vehicle that he decided not to include on

---

[1]Trooper Wilks produced two separate reports based on the inventory search: (1) a valuable items report including a pump and sprayer, a small tackle box with miscellaneous tools, and two car seats and (2) a separate property receipt listing a "25 automatic handgun." (Hr'g Tr. 27, Mar. 2, 2016; see also Hr'g Ex. 2 (towing report).) A photo of the handgun (a .25 caliber Jimenez Arms) was authenticated by Trooper Wilks and entered into evidence as Exhibit 3.

either inventory report because, in his determination, they were "items not of value." (Id. at 39.) In addition to the baseball cap, such items appear to have included a "25-cent bag of potato chips" and a "pile of clothes." (Id. at 39-40.)

**C.   The Phone Call to Mrs. Parrot**

Trooper Wilks and Mrs. Parrott do not dispute that they spoke on the phone with each other at around 10:45 p.m. on August 29, 2015, but each provides a slightly different account as to the content of the conversation. Trooper Wilks claims that he "tried to negotiate" with Mrs. Parrott on a reasonable time frame for her to come retrieve the vehicle, but, ultimately, "[s]he was not able to come get it." (Id. at 23.) Trooper Wilks estimated that she was more than 20 miles away.

Mrs. Parrott claims that Trooper Wilks never asked her whether she would be able to get the car. Rather, due to her desire to have the vehicle back, she affirmatively told Trooper Wilks she could be at the scene within 20 minutes.[2] (Hr'g Tr.

---

[2]Much of Mrs. Parrott's testimony at the suppression hearing dealt with whether or not, theoretically, she would have been able to retrieve the vehicle that night. (See Hr'g Tr. 13-17, Mar. 7, 2016.) She claims that she was not impaired and also that she had relatives and neighbors who would have hypothetically been able to help her out by giving her a ride and watching her children. (Id.) There is no evidence that Mrs. Parrott conveyed to Trooper Wilks this particular information, and in any event, had she done so it would not change the court's analysis as set forth below.

19, Mar. 7, 2016, ECF No. 33.) According to Mrs. Parrott, Trooper Wilks was unresponsive to this offer. (Id.)

In addition, Mrs. Parrott testified that she is the vehicle's sole registered owner and that Mr. Parrott did not have her permission to drive it. (See id. at 8.) He took the vehicle without her permission sometime on August 28, 2015, the day prior to the encounter between Mr. Parrott and Trooper Wilks. (Id. at 9-12.) Mrs. Parrott called Mr. Parrott's cell phone numerous times and eventually spoke with him at around noon and around 3:00 p.m. on August 29, in an attempt to retrieve her vehicle. However, the vehicle was not returned to her after either conversation. (Id. at 10-12.)

**D. The Motion to Suppress**

On December 3, 2015, a federal grand jury returned an indictment charging Mr. Parrott with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). (ECF No. 1.) Mr. Parrott now moves to suppress the handgun on the grounds that Trooper Wilks lacked a warrant to search the vehicle, there was no danger to Trooper Wilks of Mr. Parrott accessing his vehicle after his arrest, and "[t]here is nothing that indicates that the gun was seized pursuant to an inventory search: nothing other than the gun was inventoried." (Def.'s Mot. to Suppress 3-4.) The government argues that "[t]he inventory search of the Defendant's vehicle

was constitutionally permissible and consistent with the Tennessee Department of Safety (DOS) policies and procedures." (Gov't's Resp. in Opp'n to Def.'s Mot. to Suppress 3.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Reasonable Expectation of Privacy in the Vehicle

As an initial matter, a defendant who seeks to suppress evidence "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." United States v. Noble, 762 F.3d 509, 526 (6th Cir. 2014) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)). To meet this requirement, "the defendant must show (1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable." United States v. Washington, 573 F.3d 279, 282-83 (6th Cir. 2009) (citing United States v. Pollard, 215 F.3d 643, 647 (6th Cir. 2000)). "An expectation is objectively reasonable only when it is one that society is prepared to recognize as legitimate." Id. (internal quotation marks omitted). As to these particular facts, where Mr. Parrott was driving the vehicle on a revoked license without the permission of the owner, but where the owner is his wife, the law as to a defendant's privacy expectation is not settled. See United States v. Whitmore, 314 F. Supp. 2d 690, 696-97 (E.D. Mich. 2004) (stating "[t]he Sixth Circuit has not spoken directly to the issue of whether a man has a legitimate

expectation of privacy in a car that he is driving but is owned by his wife[,]" but finding an expectation of privacy where husband was licensed and presented evidence that he was the vehicle's regular user, insurer, purchaser, and mechanic). Because the government does not challenge Mr. Parrott's expectation of privacy in the vehicle, and because the court finds that the inventory search was lawful, the court need not address whether Mr. Parrott has "standing" to bring this Fourth Amendment challenge.

**B.   Inventory Search Exception to the Warrant Requirement[3]**

*1. Probable Cause to Arrest*

At the outset, the court notes that the initial encounter between Trooper Wilks and Mr. Parrott (during which Trooper Wilks approached Mr. Parrott to assist with what was apparently a disabled vehicle on the side of the highway) does not raise any Fourth Amendment concerns. There are three types of encounters between police officers and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable articulable suspicion of criminal activity; and (3) the arrest,

---

[3]Mr. Parrott, in his Motion to Suppress, claims that the search of the vehicle was an invalid search incident to arrest. The government does not argue this point and instead relies on the inventory search exception.

- 8 -

valid only if supported by probable cause." United States v. Waldon, 206 F.3d 597, 602 (6th Cir. 2000) (quoting United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997)). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). As the Supreme Court explained in Florida v. Royer, 460 U.S. 491 (1983), "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place . . ." Id. at 497. "In short, because a consensual encounter does not amount to a seizure, a police officer does not need reasonable suspicion or probable cause before approaching an individual to make an inquiry." United States v. Campbell, 486 F.3d 949, 954 (6th Cir. 2007). Here, Trooper Wilks approached Mr. Parrott to inquire as to whether he could assist Mr. Parrott with his disabled vehicle. Initially, there was no physical force or show of authority, only the type of assistance that an ordinary person would welcome when stuck with a vehicle that has broken down on the side of the highway late at night. Therefore, this began as a consensual encounter and did not become an investigative detention until after Trooper Wilks determined that Mr. Parrott had likely been driving while impaired.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Where officers lack probable cause, an arrest of a suspect violates his Fourth Amendment right against unreasonable seizure. See United States v. Torres-Ramos, 536 F.3d 542, 554 (6th Cir. 2008); Ingram v. City of Columbus, 185 F.3d 579, 592-93 (6th Cir. 1999). "'Probable cause exists where the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" United States v. Campbell, 486 F.3d 949, 957 (6th Cir. 2007) (quoting United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (6th Cir. 1988)) (omission in original).

Mr. Parrott smelled of alcohol and marijuana, appeared unsteady on his feet, and admitted to drinking alcohol and smoking marijuana on the evening of his arrest by Trooper Wilks. Trooper Wilks also discovered that Mr. Parrott had been operating a vehicle on a revoked driver's license due to a prior conviction for driving while intoxicated, which required Mr. Parrot to be arrested. Tenn. Code Ann. § 55-50-504(a)(1) (2015) (requiring confinement for not less than two days for anyone driving a motor vehicle on a public way when the privilege to do

so has been revoked due to a prior conviction for driving while intoxicated); see also id. § 55-10-401 (making it unlawful in Tennessee to be in physical control of a vehicle on the highway while under the influence of any intoxicant). Thus, Trooper Wilks had probable cause to arrest Mr. Parrott.

*2. Valid Inventory Search*

An inventory search of a vehicle conducted without a warrant does not violate the Fourth Amendment. Colorado v. Bertine, 479 U.S. 367, 371-74 (1987). Warrantless inventory searches may be conducted when police lawfully take custody of a vehicle. United States v. Smith, 510 F.3d 641, 651 (6th Cir. 2007). However, an inventory search of a vehicle must be conducted "according to standard police procedures" and may not be undertaken "for purposes of investigation." United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998); see also United States v. Tackett, 486 F.3d 230, 232 (6th Cir. 2007). "In conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy." Tackett, 486 F.3d at 232 (citing Florida v. Wells, 495 U.S. 1, 4 (1990) (stating that police must follow an established routine and not engage in "rummaging")).

For an inventory search to be valid, it must be conducted pursuant to standardized procedures. Lumpkin, 159 F.3d at 987. Trooper Wilks credibly testified that it is an internal policy

of the Department of Safety not to leave vehicles unattended on the side of the interstate, as this would present a safety hazard. Additionally, Department of Safety General Order #513 clearly indicates in § VI.H that "all" vehicles to be towed must be inventoried. Due to the valid arrest of Mr. Parrott with probable cause, Trooper Wilks was required to have the vehicle removed. Trooper Wilks determined that the best way to ensure the vehicle was not left unattended on the side of the interstate was to have it towed, at which point he was required to inventory the vehicle. The decision to inventory the vehicle was proper and made pursuant to the standard policies of the Department of Safety.

"[T]he fact that an officer suspects contraband may be found does not defeat an otherwise proper inventory search." Id.; see also Smith, 510 F.3d at 651. This is a clarification to the general rule that inventory searches are not to be conducted for investigatory purposes. While Trooper Wilks admitted that he was looking for evidence of Mr. Parrott driving under the influence (such as open containers), he was within his right to do so because he was conducting a lawful inventory search.[4]

---

[4]Nor was Trooper Wilks's inventory search invalid due to his discretion in determining which items to inventory. "[W]hen considering the comprehensiveness of an inventory list, 'an officer's use of discretion in implementing agency guidelines

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quotation marks omitted). Trooper Wilks was under no obligation to call Mrs. Parrott and alert her to the arrest or offer an opportunity for her to come retrieve the vehicle. See Kimes, F.3d at 805 ("[P]olice sometimes permitted vehicles to be picked up by a driver's friends and relations if they were already present or if the driver could contact them and get them to come to the facility promptly. Mr. Kimes suggests that rather than towing his truck, the officers should have taken it upon themselves to call his wife and ask her to get the vehicle. He cites no authority compelling such a conclusion, and we are aware of none."). It was within Trooper Wilks's discretion, regardless of which account of the phone call is to be believed, to determine that towing the vehicle was the most appropriate means of complying with the Department of Safety's policy against leaving vehicles unattended on the side of the

---

regarding the conduct of an inventory search does not necessarily violate the Fourth Amendment.'" United States v. Hockenberry, 730 F.3d 645, 659 (6th Cir. 2013) (quoting United States v. Kimes, 246 F.3d 800, 805 (6th Cir. 2001)). Trooper Wilks used his discretion to determine that the two child seats, the pump sprayer, and the small tool box were items of value in need of protection via inventory while a pile of clothes and a "25-cent bag of potato chips" were not. This discretion does not invalidate the inventory search.

interstate. Therefore, Trooper Wilks's actions were reasonable under the Fourth Amendment.[5]

### III. RECOMMENDATION

For the above reasons, the court recommends that Mr. Parrott's motion to suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 13, 2016
Date

### NOTICE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[5]This case is distinguishable from a recent case from this district invalidating a purported inventory search conducted by the Memphis Police Department. That case involved a Memphis Police Department policy that required the police to allow a third party present at the scene to move an illegally parked vehicle in lieu of towing, among other options. The court made a factual determination that the defendant's family members were on the scene and capable of moving the vehicle prior to the officer's decision to tow and inventory. United States v. Graham, No. 14-20135-STA-TMP, 2015 WL 4078299, at *12 (W.D. Tenn. July 6, 2015), appeal dismissed (Oct. 29, 2015). In contrast, under the policy of the Department of Safety, there was no requirement that Trooper Wilks present Mr. Parrott with the option of allowing a third party to move the vehicle, and it is not disputed that Mrs. Parrott was never physically present at the scene.